**SO ORDERED.**

**SIGNED this 21st day of October, 2021.**



_Dale L. Somers_
Dale L. Somers
United States Chief Bankruptcy Judge

Designated for print publication
**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

In re:

Roger Leon Comeau,                     Case No. 20-41029-12

    Debtor.

**Memorandum Opinion and Order**
**Denying Motion to Dismiss**

  Debtor Roger Leon Comeau filed a Chapter 12 bankruptcy petition to

address significant tax liability from capital gains taxes due to the

prepetition sale of farm assets. One of Debtor's creditors—the Mortgage

Investment Trust Corporation, or MITC—has moved to dismiss the Chapter

12 petition. MITC argues Debtor abandoned farming operations in 2019 and

does not now qualify as a "family farmer" as defined by 11 U.S.C. § 101(18)

because most of his current farm operations are done through separate limited liability companies.

After trial on the matter,[1] the Court concludes Debtor met his burden of proof to show he is a family farmer and eligible for Chapter 12 relief. The Court denies the motion to dismiss.[2]

# I.    Findings of Fact

Debtor has been engaged in agricultural activities since 1978. Debtor started out farming with his father, who was a farmer and oil and gas producer. Beginning in 1982, Debtor began farming individually, starting with a few hundred acres and a few cows. By 2018, Debtor himself (or through his entities, described more fully below) farmed over 15,000 acres, had a little over 1800 head of cattle, employed five people, and had more than twenty vehicles.

Beginning in 2014 and continuing through 2016, Debtor had difficult farm years. Debtor agreed to undergo an orderly liquidation of the greater portion of his farm assets. In 2018 and 2019, Debtor dramatically scaled back his farming operations, which has triggered a significant tax liability. The agricultural assets that triggered that tax liability were owned by Debtor's

---

[1] Debtor appears by Tom R. Barnes, II. Creditor MITC appears by Gabriel J. Greenbaum.

[2] Doc. 42.

2

LLCs but passed to him individually.

Debtor filed a Chapter 12 bankruptcy petition on December 28, 2020. In his petition and Schedules at filing, Debtor disclosed ownership interest in multiple pieces and portions of real estate as follows: (1) twenty-five fractional mineral interests in Rooks County and three fractional mineral interests in Ellis County, Kansas, (2) four whole or partial interests in undeveloped lots in Plainville, Kansas, (3) Debtor's home at 602 SW 10th Street, in Plainville, Kansas, (4) a lot with an office building in Plainville, Kansas, and (5) a one-third interest in 6.6 acres of agricultural land in Rooks County, Kansas. The agricultural land is valued at $1760. Debtor also notes six leases for minerals for oil and gas production.

The only vehicle Debtor disclosed is a sedan valued at $5000. Debtor confirms he individually owns no tractors or other farm implements, although some of his LLCs own tractors and equipment. Debtor answered "no" to the question of whether he owned or had any legal or equitable interest in any farm property.

In his petition, Debtor disclosed his 100% interest in the following business entities:

Liberty Buildings, LLC
Rempe's Plumbing, Heating & AC LLC
TREVO LLC

3

LR Comeau Ranch, LLC
Liberty Ranch, LLC
RAVASON, LLC
Liberty Operations & Completions, Inc.
Liberty II, Inc.
Liberty Enterprises, Inc.
Liberty Ranch Meat Co., LLC

Debtor listed a value "unknown" for all. None of the LLCs are debtors in bankruptcy.

Debtor's Schedules listed two secured debts: one for $1,013,455.21 to Bennington State Bank, secured by "oil and gas royalties derived from various oil and gas leases in production and real estate," and one for $439,910.15 to Mortgage Investment Trust Corp., although collateral was not listed. Debtor noted two large income tax claims: one to the IRS for $253,488 and one to the Kansas Department of Revenue for $66,692, both for income taxes triggered by the sale of Debtor's farm income producing real estate and personal property.

Debtor's Schedules I states his employment as "farm/ranch/oil & gas production," with a net monthly income of $7600 from "rental property and from operating a business, profession, or farm," and $1665 in monthly social security income. Debtor's monthly expenses are $5242.65.

Debtor's Statement of Financial Affairs indicates certain agricultural real estate was deeded in lieu of foreclosure to Bennington State Bank in

4

March or April 2019, and livestock and personal property was liquidated beginning in 2017 with farm equipment and machinery sold in October 2018. Proceeds from those sales were distributed to Bennington State Bank and Almena State Bank.

A few weeks after filing his petition, on January 19, 2021, Debtor amended his Schedules. The Amendment was apparently to disclose an additional lease of minerals for Debtor's oil and gas production, and a contract for sale for $1,100,000 for those royalties. Debtor again amended his Schedules on January 27, 2021, this time to indicate the 100% ownership of another business entity, called Prairie Post Rock, Inc.

At Debtor's meeting of creditors, held January 27, 2021, Debtor testified that he was not out of the faming business. Debtor testified that he still had wheat and some ground, that he rented ground, had a few hogs, and that he had a small pasture with ten cows, plus takes care of seventeen additional cows for another person. Debtor stated he works on farming "every day." Debtor also stated that he hires out all equipment and his hired hand "farms it for me."

At trial, Debtor expounded on his farming operations. One of Debtor's LLCs—LR Comeau Ranch, LLC—leases land from landowners in Rooks County. Both pre and postpetition, Debtor, through LR Comeau Ranch, LLC,

has farmed that land, and harvested crops on that land. For example, the jointly admitted exhibits show that LR Comeau Ranch in July 2021 harvested wheat and grass and received a percentage of the profits of that harvest. Debtor testified that the money goes to the LLC, but then if the LLC has a profit, the profit flows to Debtor. The LR Comeau Ranch, LLC entity also owns cattle and takes care of cattle for another individual, and while Debtor manages that enterprise, the payment for the cattle is made to the LLC. And LR Comeau Ranch, LLC also owns about 320 acres, where it has pigs and cultivated ground, plus a small area of pasture for either cattle or that can be baled. As another example, another of Debtor's LLCs—Liberty Ranch Meat Co., LLC—owns pigs. Debtor sells those pigs and payment is made to the LLC, but then any profits flow to Debtor.

Debtor also testified, however, that he does some farming in his own name, not through his LLCs. Debtor's 6.6 acres of agricultural real estate houses cattle, and he works those cattle and his hogs. Debtor owns ten head of cattle. Debtor testified he hires out "a good deal" of his farm work, due to his age and the sheer amount of work that needs done, but that he feeds animals, rounds up cattle, fixes fence, etc. Debtor's intent is to continue farming. Debtor testified he has not abandoned farming, but simply scaled back.

6

Debtor has not yet filed a Chapter 12 proposed plan and has requested an extension to December 1, 2021 to do so. Debtor has recently received orders permitting the sale of certain of his undeveloped lots in Plainville, Kansas and certain of his oil and gas working interests and intends to file his Chapter 12 plan once those sales are complete.

MITC filed two proofs of claim. Both claims were acquired from Almena State Bank via prepetition assignment of promissory notes. Proof of Claim No. 8 is for $193,258.63, secured by assignments in life insurance policies. Proof of Claim No. 8 notes, however, that the life insurance policies were redeemed for cash value by Almena State Bank and the cash value of the policies was reduced due to Debtor's prior redemption in alleged violation of the assignments, making the claim wholly unsecured. Proof of Claim No. 9 is for $265,791.03, secured by farm products and proceeds thereof and certain other personal property, perfected with UCC-1 statements. Again, the claim is wholly unsecured because of a zero value on the property.

## II.    Conclusions of Law

## A.    Chapter 12 Eligibility Generally

A motion to dismiss for a debtor's lack of eligibility to file under a particular chapter of Title 11 is a matter concerning administration of the estate and a core proceeding under 28 U.S.C. § 157(b)(2)(A) over which this

7

Court may exercise subject matter jurisdiction.[3] Under § 1208(c), the Court

may dismiss a Chapter 12 case for "cause." Debtors bear the burden of proof

to show eligibility for relief under Chapter 12.[4] To make the determination of

whether Debtors are eligible for Chapter 12, the Court focuses on the

statute's structure, and the plain meaning of the words used in the Code.[5]

Chapter 12 was enacted because the other chapters of the Code did not

"provide effective reorganization relief to the majority of family farmers."[6]

The Code provides, "[o]nly a family farmer . . . with regular annual income

may be a debtor under chapter 12" of Title 11.[7] The phrase "family farmer" is

---

[3] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Amended Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy Judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective June 24, 2013. D. Kan. Standing Order 13-1 *printed in* D. Kan. Rules of Practice and Procedure (March 2018).

[4] *In re Woods*, 743 F.3d 689, 705 (10th Cir. 2014) ("Debtors had the burden of establishing their eligibility for Chapter 12 relief."); *In re Ollis*, 609 B.R. 459, 464 (Bankr. D.S.C. 2019) ("A debtor who files a Chapter 12 petition bears the ultimate burden of proving eligibility for relief under that chapter."); *In re Rosenberger*, No. 20-50093, 2020 WL 6940926, at *3 (Bankr. W.D. Va. Sept. 29, 2020) ("The debtor bears the burden of proving her eligibility for relief under a certain chapter of bankruptcy. . . . She must put forward sufficient evidence to allow the Court to find that she satisfies the section 109(f) eligibility requirements, including the definitional section 101(18) requirement that she was 'engaged in' a farming operation at the time of filing.").

[5] *In re Woods*, 743 F.3d at 694.

[6] 7 William L. Norton, Jr. and William R. Norton III, *Norton Bankruptcy Law & Practice 3d* § 122:2 (Thompson Reuters 2021).

[7] 11 U.S.C. § 109(f).

then defined to mean an "individual . . . engaged in a farming operation" whose aggregate debt and gross income satisfy statutory requirements.[8] In this case, the challenge to eligibility is limited to whether Debtor satisfies the "engaged in a farming operation" portion of the definition of "family farmer." The Code indicates the phrase "'farming operation' includes farming, tillage of the soil, dairy farming, ranching, production or raising of crops, poultry, or livestock, and production of poultry or livestock products in an unmanufactured state."[9] The word "farming" is not itself defined.

Case law establishes the test for Chapter 12 eligibility is determined at the time the case is filed.[10] There are two elements to determining if a debtor is "engaged in a farming operation:" a temporal element (the debtor must be engaged in a farming operation on the date of filing); and a substantive element (whether the debtor's activities on that date constituted a farming operation).[11] Whether Debtor was "engaged in" a farming operation on the petition date and whether a particular activity constitutes a "farming operation" are determined on a case-by-case basis considering the totality of

---

[8] 11 U.S.C. § 101(18)(A). MITC does not challenge whether Debtor meets the income requirements.

[9] 11 U.S.C. § 101(21).

[10] *Watford v. Fed. Home Loan Bank of Columbia (In re Watford)*, 898 F.2d 1525, 1527 (11th Cir. 1990).

[11] *In re Rosenberger*, 2020 WL 6940926, at *2.

9

the circumstances.[12]

The argument of MITC is that Debtor cannot impute the farming operations of his LLCs to himself individually. MITC argues (1) Debtor individually is not engaged in a farming operation and (2) the operations of Debtor's LLCs cannot be considered to determine if Debtor is engaged in a farming operation. The Court rejects both arguments.

## B.    Debtor's Farming Operations

The Court focuses on the text of the Code and what it requires at filing: engagement in a farming operation. The term "engaged" is defined as "involved in activity: occupied, busy."[13] When determining the temporal element, whether a debtor was "engaged in" farming on the date of filing, one court has found relevant factors are: (1) "the debtor's daily involvement on the farm, (2) the debtor's legal ownership interest in the farming operation and /or its assets, and (3) the debtor's physical presence on the farm."[14] As to whether a particular business constitutes a farming operation, there is no widely accepted list; the factors courts have considered vary based upon the

---

[12] *Id.* at *2-3; *In re Maike*, 77 B.R. 832, 836 (Bankr. D. Kan. 1987) (describing the "totality of the circumstances" test).

[13] *See* "engaged," Merriam-Webster Online Dictionary, www.merriam-webster.com/dictionary/engaged (last visited September 28, 2021).

[14] *In re Rosenberger*, 2020 WL 6940926, at *3.

10

circumstances presented.[15]

The Court concludes that whether the plain meaning of the words and phrases in the Code are used or the totality of the circumstances test is used, Debtor was engaged in a farming operation at the time of filing his Chapter 12 petition.

Debtor testified about his involvement in farm operations: he feeds hogs, cares for cattle, fixes fence. Debtor's testimony is that he is physically engaged in farming daily; his hired farmer helps with these tasks but hiring farm work out is not unusual.[16] Without addressing the imputation of assets

---

[15] *E.g.*, compare *In re McLawchlin*, 511 B.R. 422, 428 (Bankr. S.D. Tex. 2014 (identifying the following factors: (i) whether the location of the operation would be considered a traditional farm, such as a rural area, (ii) the nature of the enterprise at the location, such as whether a service or product is being provided, (iii) the type of product and its eventual market, such as whether it is traditionally agricultural though this is not strictly limiting, (iv) the physical presence of family members on the farm, (v) ownership of traditional farm assets, (vi) whether the debtor is involved in the process of growing or developing crops or livestock, and (vii) perhaps the key factor being whether or not the practice or operation is subject to the inherent risks of farming) with *In re Mikkelsen Farms, Inc.*, 74 B.R. 280, 285 (Bankr. D. Or. 1987) ("whether there is a physical presence of family members on the farm, whether the debtor owns traditional 'farm assets,' whether leasing land is a form of scaling down of previous farm operations, what the form of any lease arrangement is and whether the debtor entity had, as of the date of filing, permanently ceased all of its own investment of assets and labor to produce crops or livestock").

[16] *See, e.g.*, *In re Williams*, No. 15-11023(1)(12), 2016 WL 1644189, at *2 (Bankr. W.D. Ky. Apr. 22, 2016) (renting land and contracting with others to do physical work is not indicative that the debtors were not engaged in a farming operation, where the debtors made the decisions and bore the risks); *In re Howard*, 212 B.R. 864, 872 (Bankr. E.D. Tenn. 1997) (relying on labor and assets of a third party does not disqualify a debtor from being a "family farmer").

and risks of farming from Debtor's LLCs, Debtor himself owns a one-third interest in 6.6 acres of agricultural land. Debtor houses cattle on this land. The amount of farm land, or the size of a farm, or the amount of risk undertaken is not dictated by the Code. Furthermore, ownership of assets is an element to be considered but it is not required to be a family farmer. Debtor undertook a wholesale reduction in his farm operations prepetition, but this is expected in Chapter 12, certainly is not unusual, and is not a basis to conclude that the agricultural property that remains is insufficient.[17] It would make little sense to block this Debtor from Chapter 12 relief for making a reasonable financial decision to end the portion of his farming operation that was nonprofitable.[18]

---

[17] *See, e.g.*, *In re Williams*, 2016 WL 1644189, at *3 (noting that § 1222(b)(8) permits a Chapter 12 farm debtor to liquidate, and "reflects a recognition by Congress that many family farm reorganizations, to be successful would involve the scaling down of the farm operation"); *see also In re Mikkelsen Farms, Inc.*, 74 B.R. at 285-86 ("The provisions of § 1222(b)(8) permit a Chapter 12 plan of complete liquidation. If a farm were liquidated there would be no income from farm operations to fund the plan if needed. An interpretation of § 101(18) to require annual income to be only from farm operations could, on occasion, deny a debtor the right, which it would otherwise have, to liquidate pursuant to § 1222(b)(8). . . . Thus, I find that a family farmer who otherwise qualifies under § 101(17) may be a family farmer with regular income within the meaning of § 101(18) if it can show it will have regular annual income, from whatever source, that is sufficiently stable and regular to fund the plan.").

[18] *In re Williams*, 2016 WL 1644189, at *3 ("It would make little sense to block a debtor from the relief provided by Congress under Chapter 12 simply because [the debtor] made a reasonable financial decision to end a nonprofitable farming operation which would cause the [debtor] to fall deeper into debt. This seems to be contrary to the goal of a Chapter 12.").

12

Further, Debtor's intent to continue farming is important to the Court's analysis. A highly cited case for fleshing out the definition of family farmer is an Eleventh Circuit Court of Appeals decision, *In re Watford*.[19] In *Watford*, the debtors grew soybeans, but stopped cultivating the land and stored the beans before filing Chapter 12. The debtors testified they intended to develop their land with fish ponds for recreational use and harvesting. On appeal, the Eleventh Circuit held that "a farmer who harvested soybeans in 1985, ceased actively tilling of the soil, but continues to plan the reorganization of his farming operation (though the development of fish ponds) could depending on the circumstances be 'engaged in a farming operation.'"[20] The appellate court remanded "for a determination of whether the Watfords had abandoned all farming operations at the time of filing, or whether under the totality of the circumstances the Watfords had not abandoned all farming operations, but rather were planning to continue farming operations in the form of commercial fish ponds or otherwise."[21] The standard ultimately adopted by the Eleventh Circuit asks "whether, in view of the totality of the circumstances, the debtor intends to continue to engage in a 'farming operation' even though he or she was not engaged in the physical activity of

---

[19] 898 F.2d 1525.
[20] *Id.* at 1528.
[21] *Id.* at 1529.

13

farming at the time the petition was filed."[22]

Under *Watford*, even if Debtor was not "engaged in the physical activity of farming"—which he was—he would still be eligible for relief under Chapter 12 if, under the totality of the circumstances, he intends to engage in a farming operation. So in this case, not only was Debtor physically engaged in farming through the daily care of cattle and periodic attention to the care of his owned agricultural land, Debtor testified that his intent is to continue farming. Debtor has not abandoned farming, but simply scaled back. Debtor has the means to continue farm operations and intends to do so.

The Court concludes that Debtor, regardless of the operations of his LLCs, is engaged in a farming operation.

## C.    **Debtor's LLC's Farming Operations**

To review the definitions given above: to be eligible for Chapter 12 relief, a debtor must be a "family farmer."[23] A "family farmer" is an "individual . . . engaged in a farming operation."[24] A "farming operation"

---

[22] *Id.* The majority of cases have adopted the Eleventh Circuit's totality of the circumstances approach, contrasted to a more restrictive standard from the Seventh Circuit, articulated in *In re Armstrong*, 812 F.2d 1024, 1027 (7th Cir. 1987), that interprets § 101(18) to apply only to farmers whose activities are "exposed to the inherent risks and cyclical uncertainties traditionally associated with farming."

[23] 11 U.S.C. § 109(f).

[24] 11 U.S.C. § 101(18)(A).

14

includes "farming" and raising of livestock.[25] Debtor is an individual. Debtor is engaged in (involved in, occupied, busy) a farming operation (production of pigs and cattle, planting and tillage of wheat and grass). Nowhere in this definitional maze is a prohibition on farming through a business entity.

This Court addressed a related issue in *In re Dawes*,[26] and MITC relies on *Dawes* for the conclusion that a debtor cannot attribute the operations of a separate non-debtor entity to his engagement in a farming operation. In *Dawes*, the challenge was to whether the income from a trust could be attributed to the debtors when determining if the income requirements in § 101(18)'s definition of family farmer were satisfied.[27] The portion of the family farmer definition at issue was that the individual receive more than fifty percent of the individual's gross income from his farming operation for the time periods given in the statute. The parties had an agreement that going forward, the trust would not be considered as an entity separate from the debtors, and that the debtors would be personally liable for the trust's

---

[25] 11 U.S.C. § 101(21).

[26] No. 06-11237, 2008 WL 718304 (Bankr. D. Kan. Mar. 14, 2008).

[27] *Id.* at 7. Not all the income from the trust was paid to the debtors in *Dawes*, *see id.* ("Prepetition the income of [the trust], in excess of that paid to Debtors, was not included on Debtors' tax returns and may not be attributed to Debtors for purposes of family farmer status."), which is not the same as this case. Debtor repeatedly testified that the farm income from his LLCs passed to him individually.

15

taxes.[28] The court concluded that family farmer status under § 101(18) should be "based upon the debtor's gross income, not the income of a third party whose taxes are an assumed liability of the debtor."[29] The Court found that the postpetition agreement about the trust's operation was not relevant to the debtors' status as family farmers on the date of the petition.[30]

Obviously, the income issue is distinct from the issue of whether a debtor is family farmer even though the debtor uses an LLC to organize the business of his farm. And even if it were not, the income issue in the definition of "family farmer" cannot itself be answered without reliance on the particular facts of each case. More recently, the Sixth Circuit BAP concluded that income a debtor earned from farm partnerships and subchapter S corporations could be counted as farm income when the debtor carried out her farming activity through those entities.[31] Other bankruptcy courts have permitted farm income reported by an LLC to be attributable to a debtor.[32] And there are other bankruptcy court cases concluding that, when

---

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *In re Perkins*, 581 B.R. 822 (6th Cir. BAP 2018) (concluding that bankruptcy court was not limited to looking at only income earned from farming operation that was being reorganized); *see also In re Degour*, 478 B.R. 1, 10 (Bankr. C.D. Cal. 2012) (attributing subchapter S income from corporation to debtor to determine whether debtor qualifies as family farmer).

[32] *In re Sandifer*, 448 B.R. 382, 387 (Bankr. S.D.S.C. 2011) ("The Court finds

considering the totality of circumstances, debtors who operate and manage a corporation under which farming operations occur, when those debtors "perform the traditional farming activities" for the entity, are engaged in a farming operation.[33]

The Court concludes each Chapter 12 eligibility question will be wholly fact specific and will require analysis of the totality of the circumstances to determine if the facts of the debtor's case merit Chapter 12 eligibility. Here, Debtor fully disclosed the existence of the LLCs through which he operates the majority of his agricultural enterprise. Debtor testified credibly and thoroughly about how those LLCs operate, how he runs the business of his faming operations, and the agricultural holdings of those LLCs. Debtor is

---

that the farm income reported by the LLC is attributable to Debtors. . . . To hold otherwise would merely create an impediment to adopting the limited liability company form of doing business and would deprive farmers of important tax benefits and a mechanism to reduce personal liability.").

[33] *E.g.*, *In re Schafroth*, 81 B.R. 509, 510 (Bankr. S.D. Ia. 1987); *see also In re Hemann*, No. 11-00261, 2013 WL 1385404, at *7 (Bankr. N.D. Ia. Apr. 3, 2013) ("Since the Debtor never stopped farming, but rather merely changed the scope of his operation and the form of entity under which he chose to operate, the Debtor has only one farming operation. Even if the Debtor had owned multiple entities, for instance one which raised livestock and the other which raised crops, he would still have only one farming operation."). *Cf. In re Victorious, LLC*, 545 B.R. 815, 821 (Bankr. Vt. 2016 ("From the cases involving Chapter 12 farmer eligibility, it is clear that if the debtor is a corporation, its majority ownership must be held by human beings, not by another entity, and it must be those owners of the debtor who conduct the farming operation. . . . However, there must be a clear nexus between the entity filing for Chapter 12 relief and the conduct of the farming operations in order to satisfy the eligibility requirement.").

17

deeply involved in the entities; he is the sole member/manager and the ones at issue herein carry his name. The Court does not solely rely on the fact of the LLCs' active farm operations to conclude that Debtor is engaged in farm operations, but after reviewing the facts of this case, the Court views those as an additional factor to reach the conclusion that Debtor is engaged in a farming operation as required by the definition of family farmer given in § 101(18).

## III.  Conclusion

Because the Court concludes Debtor met his burden of proof to show he was engaged in farming operations on the date of his Chapter 12 petition, the Court concludes Debtor qualifies as a Chapter 12 debtor and denies Creditor MITC's motion to dismiss.

The foregoing constitutes Findings of Fact and Conclusions of Law under Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure which make Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter.

## Judgment

Judgment is hereby entered denying the motion to dismiss of Creditor MITC. The judgment based on this ruling will become effective when it is entered on the docket for this case, as provided by Federal Rule of

Bankruptcy Procedure 9021.

**It is so Ordered**.

### # # #